**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

KATHY L. HAAS,                          :
                                        :
    *Plaintiff,*                      :      Case No. 1:22-cv-678
                                        :
vs.                                     :      Judge Jeffery P. Hopkins
                                        :
TRUPARTNER CREDIT UNION,                :
INC., *et al.,*                         :
                                        :
    *Defendants.*                     :

## OPINION & ORDER

Pending before the Court is a partial motion to dismiss (the "Motion") (Doc. 4) under Fed. R. Civ. P. 12(b)(6) brought by Defendants TruPartner Credit Union, Inc., and Steven Howe. In the Motion, Defendants ask this Court to dismiss Counts III, IV, and V from Plaintiff's complaint. *See* Doc. 3. For the reasons set forth herein, Defendant's Motion (Doc. 4) is **GRANTED IN PART** and **DENIED IN PART**.

## I.     BACKGROUND

Plaintiff Kathy Haas is a female who served as President and CEO of TruPartner from April 1, 2015, until her termination, effective August 14, 2020. Compl., Doc. 3, ¶ 1. Defendant TruPartner is an Ohio not for profit corporation. *Id.* ¶ 2. Defendant Steven Howe is an individual who presently, and at relevant times, held the position of chairman of the board of directors (referred to herein as the "Board") at TruPartner. *Id.* ¶ 3.

Ms. Haas spent many years working her way up the ladder at TruPartner. When she was promoted to President and CEO, the Board worked with an outside HR consultant in setting executive and staff salaries. *Id.* ¶ 10. Against the consultant's recommendation, the

Board offered Ms. Haas an annual salary below the market rate for a President and CEO at a comparable financial institution. *Id.* ¶ 12. The Board assured Ms. Haas, however, that she would "catch up" with the market rate for her position through subsequent annual reviews and future increases in her compensation. *Id.* ¶ 13. The Board followed the consultant's recommended percentage increase in 2017 but did nothing to "catch up" with the market rate. *Id.* ¶ 19.

Mr. Howe became Chairman of the Board in 2018 and in that role, took over the responsibility of initiating Ms. Haas' annual reviews. *Id.* ¶ 20. The Board did not conduct annual reviews for Ms. Haas in 2018 or 2019, and she did not receive any salary increases for either of those years. *Id.* ¶ 21. Nor did the Board explain why the reviews did not occur. *Id.* ¶ 22.

While employed at TruPartner in March 2018, Ms. Haas sought a construction loan to finance a personal construction project. *Id.* ¶ 32. This prompted Ms. Haas to investigate creating a construction loan program at TruPartner because the loan would generate significant income for the lender. *Id.* ¶ 34. She subsequently worked with a senior mortgage loan officer at TruPartner to put procedures and future policies in place to permit a construction loan program. *Id.* ¶ 35. Ms. Haas then sought, and was approved, for a construction loan by the TruPartner credit committee. *Id.* ¶ 37. Her loan had the same fees, terms, and interest rate available to any other member of the credit union at the time. *Id.*

The Board was informed of Ms. Haas' approved construction loan, made aware of each draw on the construction loan, and was given the opportunity to ask questions about the loan. *Id.* ¶ 38. While Ms. Haas and her fiancé began working on plans for the construction of a new house with the use of their construction loan, their attorney recommended that the

couple hold title to the new home through a limited liability company. *Id.* ¶ 42. Ms. Haas discussed this plan with the senior mortgage loan officer at TruPartner who agreed that the plan was an acceptable strategy. *Id.* ¶ 43. Subsequently, Ms. Haas formed an Ohio limited liability company for the purpose of holding title to the couple's new family home. *Id.* ¶ 44.

As construction of the home began nearing completion, Ms. Haas and the mortgage loan officer at TruPartner arranged to convert the construction loan to a mortgage loan at a loan closing. *Id.* ¶ 45. The mortgage loan officer at TruPartner communicated directly with the attorney at the title company regarding the intended structure of the new mortgage loan. *Id.* ¶ 46. Ms. Haas closed on the mortgage loan and signed the documents prepared by TruPartner's attorney on August 9, 2019. *Id.* ¶ 47. TruPartner's attorney drafted a promissory note and a mortgage both dated August 9, 2019. *Id.* ¶ 48. TruPartner's attorney also prepared a quit claim deed from Ms. Haas and her fiancé to their limited liability corporation to transfer the title to the home of Ms. Haas and her fiancé, jointly. *Id.* ¶ 49.

Shortly thereafter, the Ohio Division of Financial Institutions (referred to herein as the "ODFI") began an onsite audit of TruPartner that lasted approximately two weeks. *Id.* ¶ 53. Within the first week of the audit, the auditors began to examine Ms. Haas' mortgage loan. *Id.* ¶ 54. As part of that audit, ODFI began to question Ms. Haas about the structure of the mortgage loan, but at no time indicated why the mortgage loan was problematic. *Id.* ¶ 56–57. After the audit was completed, Ms. Haas directed a member of her staff to send the loan file to TruPartner's outside collection counsel to review the file for any issues. *Id.* ¶ 62. Ms. Haas never heard back from outside counsel.

On May 6, 2020, Mr. Howe and another member of the Board visited Ms. Haas in her office. *Id.* ¶ 69. They presented Ms. Haas with a letter dated May 6, 2020, notifying her that

the Board had decided to put her on administrative leave effective immediately as a result of a report received by the Board from ODFI. *Id.* ¶ 70. The letter instructed Ms. Haas not to contact anyone at the credit union, or anyone affiliated with TruPartner, or discuss the investigation with any other person. *Id.* ¶ 72. The letter did not explain the findings of the audit report, nor say what aspect of that report prompted the Board to put Ms. Haas on administrative leave. *Id.* ¶ 73. None of Ms. Haas' questions were answered. *Id.*

After being placed on administrative leave, Ms. Haas' counsel sent a letter dated May 13, 2020, to Mr. Howe requesting information from Mr. Howe regarding the nature of the investigation and specifically requested a copy of the audit report. *Id.* ¶ 79. An attorney subsequently notified Ms. Haas' counsel that he would be representing TruPartner with respect to the investigation and denied Ms. Haas' request for a copy of the audit report. *Id.* ¶ 80. Counsel for the Board informed Ms. Haas about a week later in another letter that the focus of the investigation was the mortgage loan she had obtained with her fiancé through TruPartner. *Id.* ¶ 91. Even so, the Board never disclosed to Ms. Haas or her attorney the contents of the audit report summarizing the relevant facts pertaining to the mortgage loan. *Id.* ¶ 116.

While the investigation was ongoing, Mr. Howe contacted individuals outside of TruPartner (including the former CEO of the Defendant credit union as well as the President of the Ohio Credit Union League) and informed them that Ms. Haas had been placed on administrative leave. *Id.* ¶ 96. Ms. Haas' counsel inquired about Mr. Howe's communications in June 2020. *Id.* ¶ 98–99.

Ms. Haas was given the opportunity to attend the Board meeting on August 4, 2020, to address the Board on the subject of the mortgage loan. *Id.* ¶ 117. At that meeting, Ms. Haas

presented a statement describing the project to construct a home as well as the process of the construction loan and the conversion of the construction loan to the mortgage loan. *Id.* ¶ 120.

Three days later, TruPartner requested Ms. Haas' resignation. *Id.* ¶ 123. The letter also included a Separation Agreement offering Ms. Haas a modest severance amount that was less than the severance amounts offered by TruPartner to their prior President/CEOs. Subsequently the parties failed to reach an agreement on the terms of the Separation Agreement. *Id.* ¶ 124–25.

Based on these events, Plaintiff asserts the following five claims in her complaint: gender discrimination, age discrimination, defamation, promissory estoppel, and tortious interference with a business opportunity. *See* Doc. 3. Defendants now move to dismiss three of those claims under Federal Rule of Civil Procedure 12(b)(6), including Plaintiff's claims for defamation, promissory estoppel, and tortious interference. *See* Doc. 4.

## II.   STANDARD OF REVIEW

A party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted" under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must include "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). This, however, requires "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action," and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable interference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

In deciding a motion to dismiss, the district court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007). In doing so, the district court "need not accept as true legal conclusions or unwarranted factual inferences." *Gregory v. Shelby County,* 220 F.3d 433, 446 (6th Cir. 2000).

## III.    LAW & ANALYSIS

### A.  Plaintiff's defamation claim is time-barred.

In her third claim, Ms. Haas alleges that Mr. Howe made defamatory statements against her by spreading news of her administrative leave among the Ohio credit union community knowing that these statements would cause harm to her professional reputation. Compl., Doc. 3, ¶ 162. Defendants argue that this claim must be dismissed as time-barred.

Defamation claims are subject to a one-year statute of limitations under Ohio Rev. Code § 2305.11(A). The rule has long been that "the statute of limitations begins to run when the allegedly defamatory words are first spoken or published regardless of the aggrieved party's knowledge of them." *Friedler v. Equitable Life Assur. Soc. of the United States*, 86 F. App'x 50, 53 (6th Cir. 2003) (quoting *Sabouri v. Ohio Dep't of Job & Family Servs.*, 145 Ohio App. 3d 651, 763 N.E.2d 1238, 1240–41 (10th Dist. 2001)). But very recently—and after briefing of the instant motion was completed in this case—the Ohio Supreme Court decided that "the discovery rule applies to claims of libel when the publication of libelous statements was secretive, concealed, or otherwise unknowable to the plaintiff due to the nature of the publication." *Weidman v. Hildebrant*, Slip Opinion No. 2024-Ohio-2931, ¶ 1.[1]

---

[1]  Libel is a defamatory statement that is "written or published," *id*. ¶ 17, n.3, whereas slander is spoken. 35 Ohio Jur.3d, Defamation and Privacy, § 1, at 443 (2019).

Ms. Haas alleges that defamatory statements were made during her administrative leave—from May 6, 2020, through August 14, 2020. Compl., Doc. 3, ¶ 96, 130. She did not file her complaint until October 14, 2022, which means that she asserted her claim well beyond the one-year statute of limitations. *See* Doc. 2. Ms. Haas attempts to overcome this hurdle by urging the Court to apply the discovery rule. But even the discovery rule—to the extent that it applies to any libelous statements—would not rescue Ms. Haas' defamation claim. The allegations in her complaint make clear that she became aware of the alleged defamatory statements at least as early as June 1, 2020. On that date, her counsel emailed opposing counsel to inquire about statements Mr. Howe had made to individuals in the Ohio credit union community:

> On the subject of confidentiality, [Ms. Haas] has learned that Steve Howe called Bill Herring to let him know about her being placed on leave. Likewise, Mr. Howe contacted the president of the Ohio Credit Union League to notify them about [her] leave. How many other people has [Mr. Howe] contacted outside of TruPartner to discuss [Ms. Haas'] situation? How confidential is this process if Mr. Howe is free to call people and disclose what is going on? … If Mr. Howe believed there was any chance of [Ms. Haas] being reinstated, he would be concerned about public perception of her as CEO of TruPartner. If Mr. Howe is willing to 'let the cat out of the bag,' it seems obvious he has no plans to bring [Ms. Haas] back to the Credit Union.

*Id.* ¶ 99. Thus, Plaintiff's defamation claim accrued at least as of June 1, 2020, which was within the one-year statute of limitations. *See Weidman*, 2024-Ohio-2931, ¶ 22 ("[W]hen the defamed person gains knowledge of the defamatory statements within the statute-of-limitations period, the discovery rule is not applicable."). And even assuming *arguendo* that the alleged defamatory statements were made to other persons beyond that date, "Ohio courts have consistently rejected efforts to restart the statute of limitations in a defamation action

where allegedly defamatory information, which has already been published or spoken, is republished or retransmitted to new consumers." *Friedler*, 86 F. App'x at 55.

Thus, even under the most liberal interpretation of the discovery rule, the statute of limitations has run. Ms. Haas' defamation claim must be dismissed.

**B. Plaintiff may alternatively plead her promissory estoppel claim.**

In her next claim, Ms. Haas alleges that she detrimentally relied on TruPartner's representations that they would increase her compensation to market value and retroactively pay past due salary increases. Compl., Doc. 3, ¶ 184–86. TruPartner argues, however, that Ms. Haas cannot rely on promissory estoppel as an alternative to recovery for a breach of contract claim.

To properly state a claim for promissory estoppel, a plaintiff must prove (1) the existence of a clear and unambiguous promise, (2) that was relied upon by the party to whom the promise was made, (3) where such reliance was reasonable and foreseeable, and (4) where there was an injury resulting from the reliance. *O.E. Meyer Co. v. BOC Group*, 6th Dist. Erie No. E-99-002, 2000 WL 234549, at *17 (March 3, 2000). "[T]he existence of a valid and enforceable contract 'generally' precludes a claim of promissory estoppel arising from claims related to the contract." *Schaumleffel v. Muskingum Univ.*, No. 2:17-cv-463, 2018 WL 1173043, at *17 (S.D. Ohio Mar. 6, 2018). However, Ohio courts routinely allow parties to plead promissory estoppel claims in the alternative to breach of contract claims. *Ritz Safety, LLC v. Strategyn Mgmt. Grp., LLC*, No. 3:20-cv-413, 2021 WL 1721050, at *3 (S.D. Ohio April 30, 2021). In such circumstances, parties are not permitted to recover under both theories. *Id.*

Ms. Haas alleges in her complaint that she detrimentally relied on TruPartner's promises to increase her compensation to market value and pay her 2018 and 2019 salary

increases retroactively. *See* Compl., Doc. 3, ¶ 173–86. Accordingly, Ms. Haas has sufficiently pleaded a claim for promissory estoppel as an alternative theory of recovery survivable under *Iqbal.* 556 U.S. at 678.

**C. Plaintiff has failed to state a claim for tortious interference.**

Ms. Haas alleges in her fifth and final claim that Mr. Howe tortiously interfered with business opportunities with TruPartner and within the credit union market in Ohio. Compl., Doc. 3, ¶ 188–92. Mr. Howe argues that he cannot be liable for tortious interference when he was acting in his capacity at the chairman of the Board at TruPartner.

In order to prevail on a claim for tortious interference with a business opportunity, a plaintiff must show "(1) the existence of the prospect of a business relationship; (2) that defendant knew of the plaintiff's prospective relationship; (3) that defendant intentionally and materially interfered with the plaintiff's prospective relationship; (4) without justification; and (5) caused plaintiff to suffer damages." *Chrvala v. Borden, Inc.*, 14 F.Supp. 2d 1013, 1023 (S.D. Ohio 1998) (citing *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St. 3d 415, 650 N.E.2d 863, 866 (1995)). Ohio law provides that "an action for tortious interference may only lie against an outside party to the contract or prospective business relationship." *Lundeen v. Smith-Hoke*, 10th Dist. Franklin No. 15AP-236, 2015-Ohio-5086, ¶ 42; *see Julie Maynard, Inc. v. Whatever It Takes Transmissions & Parts*, No. 3:19-cv-238, 2020 WL 1244189, at *2 (S.D. Ohio Mar. 16, 2020) (quoting *Erebia v. Chrysler Plastic Prods. Corp.*, 891 F.2d 1212, 1216 (6th Cir. 1989) ("Because tortious interference requires interference by a third party, '[a]n essential element of the tort is interference by someone who is not a party or agent of the party to the contract or relationship at issue.'")). And it is well-established that a defendant cannot be the

source of the business opportunity allegedly interfered with. *Lundeen*, 2015-Ohio-5086, ¶ 42 (quoting *Pasqualetti v. Kia Motors Am., Inc.*, 663 F.Supp. 2d 586, 602 (N.D. Ohio 2009)).

Ms. Haas has failed to properly state a claim that alleges Mr. Howe tortiously interfered with prospective business opportunities with, and outside, TruPartner. Although she vaguely alleges that Mr. Howe tortiously interfered with business opportunities with "key people within the credit union community in Ohio," *see* Compl., Doc. 3, ¶ 191, "[a] vague assertion that a party interfered with certain unspecified business relationships is insufficient to state a claim for tortious interference with a business relationship." *Emanuel's LLC v. Restore Marietta, Inc.*, 2023-Ohio-147, 206 N.E.3d 116, ¶ 23 (4th Dist.). Additionally, it is not clear how Mr. Howe tortiously interfered with *prospective* business opportunities with TruPartner when she was already employed there. In any event, Ms. Haas has not properly alleged interference by Mr. Howe given his role as chairman of the Board.

To the extent that Ms. Haas intends to state a separate claim for tortious interference with a contractual relationship, this claim must also be dismissed. Ohio law recognizes separate causes of action for tortious interference with a business opportunity and tortious interference with a contractual relationship. *Super Sulky, Inc. v. United States Trotting Ass'n*, 174 F.3d 733, 741 (6th Cir. 1999). The required elements for these tortious interference claims are nearly identical with "the main distinction being 'that interference with a business relationship includes intentional interference with prospective contractual relations, not yet reduced to a contract," while tortious interference with a contractual relationship requires just that—a contract. *Georgia-Pacific Consumer Prods. LP v. Four-U-Packaging, Inc.*, 701 F.3d 1093, 1102 (6th Cir. 2012) (quoting *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co.*, 148 Ohio App. 3d 596, 2002-Ohio-3932, 774 N.E.2d 775, 780–81 (3d Dist.)).

Because tortious interference must involve a non-party to a contract, *Lundeen*, 2015-Ohio-5086, ¶ 42, "it is generally established that corporate officers are not capable of interfering with contracts to which their principal is party," *Castle Hill Holdings, LLC v. Al Hut, Inc.*, 8th Dist. Cuyahoga, 2006-Ohio-1353, ¶ 47. "Officers, directors, and creditors of a corporation have a privilege to interfere with contracts in furtherance of their legitimate business interests." *Dorricott v. Fairhill Ctr. for Aging*, 2 F.Supp. 2d 982, 989–90 (N.D. Ohio 1998). Thus, "[c]orporate agents cannot be liable for tortious interference with the corporation's contracts or business relationships unless they acted solely for their own benefit with no benefit to the corporation." *Bhan v. Battle Creek Health Sys.*, 579 F. App'x 438, 445 (6th Cir. 2014).

Here, Mr. Howe was acting in his capacity as the chairman of the Board at TruPartner when Ms. Haas was placed on administrative leave and ultimately terminated from her position there. It is impossible to conclude that Mr. Howe, as the chairman of the Board, was a non-party to the contractual relationship at issue when the TruPartner Board was tasked with deciding whether Ms. Haas retained her position as President/CEO.

While she alleges in opposition that the actions that led to her termination were driven by Mr. Howe's personal vendetta against her, Ms. Haas has failed to plead facts that would show Mr. Howe was acting solely for his own benefit. The investigation that ultimately prompted her administrative leave and subsequent termination arose from an independent audit conducted by the Ohio Division of Financial Institutions. Compl., Doc. 3, ¶ 53–62. Mr. Howe and another member of the Board presented Ms. Haas with a letter notifying her of the administrative leave. *Id.* ¶ 69–76. And, in a letter provided through counsel, Ms. Haas was ultimately notified that "the [B]oard has reached the conclusion that it is no longer in the best

11

interest of the credit union for Ms. Haas to continue to serve as CEO…[and] the [B]oard has unanimously resolved to ask Ms. Haas to tender her resignation." *Id.* ¶ 122. Although she alleges other actions by Mr. Howe that could amount to personal animosity, Ms. Haas has failed to plead any facts that show Mr. Howe acted solely for his personal benefit. *See Julie Maynard, Inc.*, 2020 WL 1244189, at *3 ("[T]o be liable for tortious interference, [a member of the board of directors] must have committed some act outside of the scope of his position, for his own personal benefit, and to the detriment of [the corporation].").

## IV.    CONCLUSION

Defendants' partial motion to dismiss (Doc. 4) is therefore **GRANTED IN PART** and **DENIED IN PART**. Ms. Haas' claims for defamation and tortious interference with a business opportunity are hereby dismissed. To the extent that Ms. Haas intended to raise a separate claim for tortious interference with a contractual relationship, that too is dismissed. The Court will set this matter for a Preliminary Pretrial Conference by separate notice.

**IT IS SO ORDERED.**

August 22, 2024

Jeffery P. Hopkins
United States District Judge